UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11030 -GAO

JOSEPH MESSERE, et al.,
Plaintiffs,

v.

NANCY ANKERS WHITE, et al.,
Defendants.

MEMORANDUM AND ORDER

O'TOOLE, D.J.

For the reasons stated below, within forty-two (42) days of the date of this Memorandum and Order, plaintiffs shall show cause, in writing, why this action should not be dismissed or they shall file an amended complaint which cures the deficiencies of the original complaint.

I   BACKGROUND

Plaintiffs Joseph Messre, Alan Gaudreau and Bodhisattva Skandha, three inmates now incarcerated at MCI-Norfolk, filed their complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962. See Complaint ("Compl."). In the introduction to the complaint, plaintiffs allege that an "enterprise of illegally hired employees of the 'Legal Division' of the DOC . . . conspired . . to illegally represent state agents who have or will be sued by prisoners in the Courts of Massachusetts." Id. at pp. 2-3. Plaintiffs requested relief includes (1) declaration of their rights; (2) injunctive relief "that commands the defendants to cease and desist representing state agents, cease and desist from any conspiracy thereby, and cease and desist from the misallocation of agency funds to an illegal enterprise," (3) nominal damages in the amount of $1.00, (4)

"prospective relief to fairly and adequately protect the interest(s) of the class," and (5) protection for plaintiffs from retaliation for bringing this lawsuit. Id. at pp. 30-31.

By Procedural Order dated October 26, 2012, each plaintiff was assessed an obligation to make payments toward their proportionate share of the filing fee pursuant to 28 U.S.C. § 1915(b). See Docket No. 15. The complaint was returned to the undersigned for preliminary screening pursuant to 28 U.S.C. §§ 1915(e), 1915A.

Plaintiffs allege that they are taxpayers with a right to question the expenditure of funds by the Department of Correction. See Compl., ¶ 50; see also Compl., ¶ 67 (sales tax money is collected from the plaintiffs pursuant to M.G.L. ch. 64H, § 2). The fourteen named defendants are Luis Spencer, Commissioner of Correction ("Commissioner" or "Spencer"); Martha Coakley, the Attorney General for the Commonwealth ("Attorney General" or "Coakley"); Nancy White, the General Counsel for the Department of Correction ("DOC General Counsel" or "White"); and eleven attorneys with the Department of Correction legal division ("DOC attorneys" or "DOC counsel"). Id. at ¶¶ 4-17.

### A. Appearances for the Commonwealth, M.G.L. ch. 12, § 3

Plaintiffs allege that state law, see M.G. L. ch. 12, § 3 (appearances for commonwealth, prosecution or defense; rendering of legal services; payment of expenses for representation of department of transportation), permits the attorney general to appoint assistant attorneys general to represent state agents. Compl., ¶¶ 23, 30, 33, 43.

Plaintiffs contend that only Attorney General Coakley or her assistant may represent a state agent. Id. at ¶¶ 23, 30, 33. Specifically, plaintiffs allege that the defendant DOC attorneys appeared in state and federal court litigation in contravention of M.G.L. ch. 12, § 3. See Id. at ¶¶

21-22 (defendant Kennedy in Messere v. Dennehy, 06-11156-PBS), ¶¶ 24-25 (defendant Glazer in Messere v. Clarke, et al., 11-12166-MLW), ¶ 26 (defendant Cole in Messere v. Spencer, et al., 11-11705-MLW; ¶ 27 (defendant Rentsch in Beauregard, et al. v. Clarke, et al., SUCV2010-03441); ¶ 28 (defendant Melville in Gaudreau v. Spencer, SJC2008-049, SJ2008-0401); ¶ 29 (defendant Caravaggio in Skandah v. Roden, et al.); ¶ 31 (defendant DeDosantos in Skandha v. Savoie, et al., 10-11955-NMG; ¶ 35 (defendant Hosler in Skandha v. UMASS Memorial Healthcarae, et al., SUCV2009-05459; ¶ 36 (defendant Grant in Skandha v. Levesque, SUCV2009-05106; ¶ 37 (defendant Schneider in Skandha v. Rego., SUCV2011-02602.

        B.      Alleged Conspiracy between the Attorney General and
                the General Counsel for the Department of Correction

Plaintiffs allege that Defendant White has been General Counsel for the Department of Correction for over twenty-five years. Compl., ¶ 78. Plaintiffs allege that defendants Coakley and White conspired to have White appointed as a Special Assistant Attorney General ("SAAG"). Id. at ¶ 39. Plaintiffs explain that if a state agent is sued, he or she may hire private counsel or may be represented by the Attorney General. Id. at ¶¶ 73, 74. Plaintiffs contend that such hiring of private counsel is subject to the Commonwealth's "competitive bidding procurement system." Id. at ¶ 81. Plaintiffs complain that DOC counsel represented state agents but "refused to make written requests for legal services available for competitive bidding." Id. at ¶ 82.

Apparently, the plaintiffs presented Attorney General Coakley with "a notice of claim," and Attorney General Coakley allegedly delegated the investigation to an employee of the Department of Correction instead of delegating the investigation to her staff. Id. at ¶¶ 75, 76. Plaintiffs complain that Attorney General Coakley "refused to authenticate defendant White's

appointment as a SAAG." Id. at ¶ 77.

Plaintiffs complain that White failed to notify the Massachusetts State Ethics Commission that she serves as a SAAG while simultaneously serving as Chief Counsel for the Department of Correction. Id. at ¶¶ 48, 72. Plaintiffs allege Coakley issued guidelines which govern White's authority to supervise the representation of state agents who are sued in court. Id. at ¶ 79.

Plaintiffs allege that the standard fee for a SAAG is $125 per hour. Id. at ¶ 47. Plaintiffs allege that Coakley abrogated G.L. ch. 12, § 3 in a deliberate effort to "control her budget" Id. at ¶ 43. Plaintiffs contend that appointment of a SAAG should be for only a one-time, specific task. Id. at ¶ 49.

Although General Counsel White has been appointed as a SAAG, plaintiffs allege none of the DOC attorneys have been appointed as a SAAG. Id. at ¶ 41. Plaintiffs explain that DOC counsel made an agreement with General Counsel White to assume her status as a SAAG." Id. at ¶ 38. Plaintiffs allege that DOC attorneys use the mail during their representation of the Commonwealth, Id. at ¶ 42, and that they "fraudulently misrepresented [their] status as a SAAG, an assistant Attorney General. Id. at ¶¶ 51-61.

C.  Allegations against the Commissioner of Correction

Plaintiffs allege that the Commissioner misappropriated more than one million dollars to pay defendant employees in furtherance of prohibited representation of state employees. Id. at ¶¶ 62, 84. Plaintiffs complain that the Commissioner chose to pay the defendants over one million dollars annually rather than (1) making repairs to the sewer system at MCI Norfolk, see id. at ¶ 63; (2) fixing the heating systems at MCI Norfolk, see id. at ¶64; (3) installing water

filters for the housing units at MCI Norfolk, see id. at ¶ 65; (4) allocating funds for the plaintiffs' individual rehabilitation plan as required by law, see id. at ¶ 66; and (5) providing pay increases for inmate employees because they have not received a pay raise in thirty years, see id. at ¶¶ 83, 84.

Plaintiffs further complain that the Commissioner used sales tax monies collected pursuant to M.G.L. ch. 64H, § 2 (sales tax) for (1) paying DOC counsel, see id. at ¶ 67; (2) mailing litigation to the courts, see id. at ¶ 68; and (3) supervising the plaintiff in the law library, see id. at ¶ 69.

II    DISCUSSION

    A.    Screening of the Complaint

When plaintiffs are permitted to proceed without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915.  Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are subject to screening.  Both § 1915 and § 1915A authorize federal courts to dismiss complaints sua sponte if the claims therein lack an arguable basis in law or in fact, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2); Neitzke v. Williams, 490 U.S. 319, 325 (1989) Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001).

In conducting the preliminary review, the Court construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals, and applies a standard

analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Castro v. United States, 540 U.S. 375, 381 (2003). To determine if the complaint states a cognizable claim, the Court accepts as true the factual allegations and all reasonable inferences drawn therefrom, even if "seemingly incredible," Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and then determines whether those allegations "state a plausible, not a merely conceivable, case for relief." Sepúlveda– Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–80 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," without considering the likelihood of success on the merits. Iqbal, 556 U.S. at 679; see also Ocasio–Hernández, 640 F.3d at 12–13 (explaining limits of court's discretionary review).

    B.    <u>Standing</u>

Under ordinary standing principles, the plaintiffs' allegations do not establish their standing to bring suit pursuant to Section 1983 or civil RICO.  In every federal case, the parties bringing the suit must establish standing to prosecute the action. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  As a general rule, a taxpayer concerned that government officials have misspent his tax dollars does not have a personal stake in the dispute - any more than any other taxpayer does - and thus lacks the "concrete and particularized" injury that Article III requires.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 322, 344 (2006) (internal quotation marks omitted).

Here, there is no indication plaintiffs have been injured personally by the arrangement between the Attorney General, the DOC General Counsel and the DOC attorneys.  "[T]he interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for Article III standing."  Hein v. Freedom From Religion Foundation, Inc., 551 U.S. 587, 599 (2007).  The three plaintiffs are alleged to be state taxpayers, presumably because they pay state sales tax for their prison purchases.  Plaintiffs' contention that the employment arrangement with the DOC counsel negatively impacts MCI-Norfolk's ability to provide "services" to inmates is speculative.  There is no guarantee that redirected monies would be used by the Department of Correction in the manner sought by plaintiffs.

    C.    Section 1983

Plaintiffs assert claims pursuant to 42 U.S.C. § 1983.  However, this court does not have subject matter jurisdiction under Section 1983 to adjudicate claims that state officials and employees failed to abide by state statutes.  Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Section 1983 creates a cause of action for persons who are denied a federally protected right.  This Court does not have the power to direct state officials to comply with state law.  See Quntero de Quintero v. Aponte-Roque, 974 F.2d 226, 230 (1st Cir. 1992) (citing Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 106 (1984)).  Plaintiffs' Section 1983 claims are

subject to dismissal insofar as plaintiffs fail to allege that the defendants violated any federal law. Colon-Rivera v. Puerto Rico Dep't of Soc. Serv., 736 F.2d 804, 806 (1st Cir. 1984) ("Merely erroneous applications of state statutes do not present a question of federal constitutional magnitude as long as there is an adequate state remedy."), cert. denied, 469 U.S. 1112 (1985). There is no contention that plaintiffs are without an adequate remedy in the state courts to redress the alleged violations of the Commonwealth's statutes. Reid v. State of New Hampshire, 56 F. 3d 332, 336 n. 8 (1st cir. 1995) (even where a colorable assertion of subject matter jurisdiction might be made, "[g]iven an adequate state-law remedy for a procedural due process violation, no § 1983 claim lies."). Violations of state law - even where arbitrary, capricious, or undertaken in bad faith-do not, without more, give rise to denial of substantive due process under the U.S. Constitution." Coyne v. City of Somerville, 972 F. 2d 440, 444 (1st Cir. 1992). Plaintiffs fail to state a Section 1983 claim and, as explained below, see infra. ¶ D, the claimed violations of state law do not amount to "racketeering activity" under RICO.

   D. <u>The Racketeer Influenced and Corrupt Organizations Act</u>

   Plaintiffs allege that defendants acted together to violate the Racketeer Influenced and Corrupt Organizations (RICO) Act. However, the complaint has not stated a claim for relief under the civil RICO statute. District courts have jurisdiction over RICO claims pursuant to 18 U.S.C. § 1962. RICO provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. 1962(c).

   A finding of liability under Section 1962(c) "requires proof of several elements including

the existence of a racketeering 'enterprise' and its conduct through a 'pattern' of racketeering activity, which requires at least two [related] acts of racketeering . . . ." Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 11 (1st Cir. 2010), quoting 18 U.S.C. §§ 1961(4)-(5).  Crimes constituting predicate acts are set out in the statute. See 18 U.S.C. §§ 1961(1), 1962(c).

In order to have standing to sue under RICO, a plaintiff must establish that he has been "injured in his business or property by reason of a violation of section 1962."  Here, if there are any injuries to the plaintiffs, they would be indirect injuries.  Plaintiffs have not alleged that they have suffered any injury to their business or property and thus do not have statutory standing to sue under RICO standards.  Plaintiffs attempt to argue that they have not received an increase in pay for prison employment, but such injury is speculative.  There is no guarantee that monies redirected from paying DOC counsel would be used in any of the ways sought by plaintiffs, including an increase in prison wages.

Although the complaint alleges that all of "the defendants have violated 18 USC § 1962," Compl., ¶ 80, the complaint fails to allege a distinct enterprise.  An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  However, "the 'person' alleged to be engaged in racketeering activity (the defendant, that is) must be an entity distinct from the 'enterprise.'"  Odishelidze v. Aetna Life & Cas. Co., 853 F.2d 21, 23 (1st Cir. 1988), quoting 18 U.S.C. § 1962(c); see also Doyle v. Hasbro, Inc., 103 F.3d 186, 190-191 (1st Cir. 1996).

To plead a "pattern of racketeering activity," a plaintiff must allege two predicate acts of

racketeering activity which occurred within ten years of each other. 18 U.S.C. § 1861(5). Predicate acts are acts indictable under any one or more of certain laws specified in 18 U.S.C. § 1961(1), including mail and wire fraud statutes.

Plaintiffs allege DOC counsel used the United States mail in the normal course of representing state agents in the Courts of Massachusetts and fraudulently misrepresenting their status as being SAAGs. They allege that the Commissioner fraudulently misappropriated and misallocated funds allegedly depriving plaintiffs of resources mandated by the state legislature. However, the actions in these allegations do not violate any of the laws specified in 18 U.S.C. § 1961(1).

    E.    Class Certification

Although plaintiffs have not moved for class certification, the case caption of the complaint states that plaintiffs include "all similarly situated prisoners," the complaint references Rule 23 of the Federal Rules of Civil Procedure, and plaintiffs seek prospective relief to protect the interest of the class.

Plaintiffs have the burden of showing that the requirements for class certification are met. See Makuc v. American Honda Motor Co. Inc., 835 F.2d 389, 394 (1st Cir. 1987). For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. See Fed. R. Civ. P. 23(a)(4). Generally, pro se litigants are inappropriate representatives of the interests of others. See McGoldrick v. Werholtz, 185 Fed. App'x 741, 744 (10th Cir. 2006) (indicating that the district court would have abused its discretion if it had certified a class action because plaintiffs are pro se); Garrison v. Mich. Dep't of Corr., 333 F. App'x 914, 919 (6th Cir. 2009) (citing Oxendine v. Williams, 509 F.2d 1405,

1407 (4th Cir. 1975) (holding competence of layman representing himself was too limited to allow him to risk the rights of others by proceeding pro se in class action)); Violette v. N.H State Prison, No. 07-cv-047, 2007 WL 1041034 at *4 (D.N.H. Apr. 6, 2002) (denying class certification because pro se litigant would act as class representative); see also Herrera-Venegas v. Sanchez-Rivera, 681 F.2d 41, 42 (1st Cir. 1982) (indicating that federal courts have consistently rejected attempts at third-party lay representation). Because the plaintiffs have not shown that the requirements for class certification are met, no class will be certified pursuant to Rule 23(a)(4).

III     CONCLUSION

For the foregoing reasons, plaintiffs' complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. ACCORDINGLY, it is hereby ORDERED, within forty-two (42) days of the date of this Memorandum and Order, plaintiffs shall show cause why this action should not be dismissed in whole or in part, or they shall file an amended complaint which cures the deficiencies of the original complaint.

SO ORDERED.

 January 9, 2013                              /s/ George A. O'Toole, Jr.
DATE                                      GEORGE A. O'TOOLE, JR.
                                          UNITED STATES DISTRICT JUDGE